

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-17-00227-CR

———————————————

RANDALL RAY LYLE, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1239400D

Before Gabriel, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Gabriel
Justice Bassel Dissents and Concurs without Opinion

# MEMORANDUM OPINION

Appellant Randall Ray Lyle appeals from the trial court's revocation of his community supervision, adjudication of his guilt for theft of property valued at $20,000 or more but less than $100,000, and imposition of a four-year sentence. He raises challenges to his original guilty plea, which resulted in the order of deferred adjudication, and to the later revocation and adjudication. We conclude that we do not have jurisdiction to address Lyle's challenges to his original guilty plea. Further, we conclude that the trial court's sentencing determination upon revocation and adjudication was not an abuse of discretion and that the record sufficiently supported the trial court's imposition of unpaid community-supervision fees as reparations in the adjudication judgment. But $50 of the ordered reparations is not specifically identified and must be subtracted from the $590 in reparations in the adjudication judgment. And because the adjudication judgment incorrectly imposed a $980 fine and $34,297.62 in restitution, which were not orally pronounced upon revocation and adjudication, we modify the adjudication judgment to delete those amounts. As modified, we affirm the trial court's adjudication judgment.

## I. BACKGROUND

### A. GUILTY PLEA AND DEFERRED ADJUDICATION

In 2011, Lyle was indicted for theft of property valued at more than $20,000 but less than $100,000—a third-degree felony. *See* Tex. Penal Code Ann. § 31.03(a),

(e)(5).[1]  Five years later,[2] Lyle agreed to plead guilty in exchange for the State's recommendation that the adjudication of his guilt be deferred and that he be placed on community supervision for ten years.  As part of the plea agreement, Lyle affirmed that his plea was voluntary, that his retained attorney had provided "fully effective and competent representation,"[3] and that he waived his right to appeal.  Lyle also signed a judicial confession confirming that he was guilty of the charged offense.  On September 7, 2016, Lyle pleaded guilty to the charged offense in open court and orally confirmed that his plea was voluntary.  The trial court followed the plea-bargain recommendation and entered an order deferring any guilt adjudication and placing Lyle on community supervision for ten years.  At the conclusion of the guilty-plea hearing, Lyle's retained counsel questioned Lyle about his plea:

> Q. [By Lyle's counsel]  Mr. Lyle, when we originally came to court today, it was your understanding that I was going to seek the Court's permission to withdraw as your attorney of record; is that correct?
>
> A.  Yes.

---

[1]In 2015, the legislature amended section 31.03(e) to increase the minimum value of stolen property to qualify as a third-degree felony from $20,000 to $30,000. Act of May 31, 2015, 84th Leg., R.S., ch. 1251, § 10, sec. 31.03(e), 2015 Tex. Sess. Law Serv. 4208, 4212 (effective Sept. 1, 2015).

[2]The five-year delay is not clearly explained in the record other than the fact that an arrest warrant was issued on May 12, 2011; bond was set at $5,000 that same day; and Lyle was again arrested on April 18, 2016.

[3]Lyle, who affirmed that he was not entitled to appointed counsel, retained counsel in June 2016—three months before the guilty-plea hearing.

Q. And upon approaching the bench, you were informed that you would have to either hire another attorney or, according to the prosecutor, take your plea today or all plea offers would be withdrawn; is that correct?

A. Yes.

Q. And during this short time period, have you had an opportunity to ask me any question that you've wondered about?

A. Yes.

Q. Okay. Have I answered all of your questions?

A. Yes, you have.

Q. Are you pleased with my services?

A. Yes.

The trial court certified that Lyle had no right to appeal because of the plea bargain and because of his express waiver. *See* Tex. R. App. P. 25.2(a)(2); *see also* Tex. Code Crim. Proc. Ann. arts. 1.14(a), 44.02.

## B. REVOCATION AND ADJUDICATION

During the community-supervision period, the State filed a petition to proceed to an adjudication, alleging that Lyle had failed to report to his community-supervision officer several times and had not been paying his community-supervision fees or restitution as previously ordered. At the adjudication hearing, Lyle pleaded true to the State's allegations. The trial court heard evidence that Lyle had issues with alcohol but revoked Lyle's community supervision, adjudicated his guilt of the underlying offense, and sentenced him to four years' confinement. The trial court

4

certified that Lyle had the right to appeal the judgment adjudicating his guilt. *See* Tex. Code Crim. Proc. Ann. art. 42A.755(e) ("When the defendant is notified that the defendant's community supervision is revoked . . . and the defendant is called on to serve a sentence [of confinement], the defendant may appeal the revocation."). On appeal, Lyle challenges his original guilty plea, the adjudication and revocation, and the reparation and restitution amounts included in the adjudication judgment.

## II. GUILTY PLEA

In his first two points, Lyle argues that his guilty plea was involuntary because it was made under duress and based on ineffective assistance of counsel. Lyle relies on his allegation that counsel threatened to withdraw if Lyle did not accept the State's plea-bargain offer, which Lyle argues was deficient performance and rendered his plea involuntary.

In general, a defendant placed on deferred adjudication community supervision may raise issues regarding the original plea proceeding only in appeals taken when the trial court first imposes deferred adjudication community supervision. *See Manuel v. State*, 994 S.W.2d 658, 661–62 (Tex. Crim. App. 1999); *see also* Tex. Code Crim. Proc. Ann. art. 42A.755(e) ("The right of the defendant to appeal . . . shall be accorded the defendant at the time the defendant is placed on community supervision."). Unless the order placing Lyle on deferred adjudication community supervision was void, he may not raise issues related to the original plea proceeding—including voluntariness and ineffective-assistance issues—in his appeal from the subsequent adjudication

proceeding. *See Robinson v. State*, Nos. 02-17-00054-CR, 02-17-00055-CR, 2018 WL 1095793, at *2 (Tex. App.—Fort Worth Mar. 1, 2018, no pet.) (mem. op., not designated for publication); *Ebiana v. State*, 77 S.W.3d 436, 438 (Tex. App.—Corpus Christi–Edinburgh 2002, pet. ref'd); *Hanson v. State*, 11 S.W.3d 285, 287–88 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). Neither an involuntary guilty plea nor an ineffective-assistance claim renders the resulting deferred-adjudication order void. *See Jordan v. State*, 54 S.W.3d 783, 785 (Tex. Crim. App. 2001); *Pena v. State*, 551 S.W.3d 367, 370 (Tex. App.—Amarillo 2018, no pet.). Thus, we do not have jurisdiction to address points one and two directed to the original plea proceeding, and we dismiss them.[4]

### III.  REVOCATION AND ADJUDICATION

In his remaining three points, Lyle contends that the revocation and adjudication were abuses of discretion because the trial court did not follow a progressive sanction short of revocation and that the resulting adjudication judgment contained improper restitution and reparations amounts. Lyle does not challenge the sufficiency of the evidence to support the revocation and adjudication, which were based on his pleas of true to the violation allegations. *See generally Tapia v. State*, 462

---

[4]Were we to have jurisdiction, we would conclude that the record shows that Lyle entered his guilty plea freely and voluntarily with the effective assistance of counsel. *See, e.g.*, *Dominguez v. State*, 535 S.W.3d 125, 133–35 (Tex. App.—El Paso 2017, no pet.).

S.W.3d 29, 31 n.2 (Tex. Crim. App. 2015) ("A plea of true, standing alone, is sufficient to support the revocation of community supervision and adjudicate guilt.").

## A. SENTENCE

In his brief, Lyle posits that the legislative intent behind community supervision reveals that its primary objective is rehabilitation. He relies on a bench manual prepared by the Texas Department of Criminal Justice's community-justice assistance division, which indicates that trial courts should focus on empirical evidence of the effectiveness of a particular punishment to achieve a "sustained reduction in criminal behavior." Based on the primary objective of community supervision and the information in the bench manual, Lyle asserts that the trial court should have ordered him "to specialized treatment for substance abuse" instead of revoking his community supervision and adjudicating his guilt.[5]

Lyle concedes that no binding authority required the trial court to impose substance-abuse treatment in lieu of revocation and adjudication. Indeed, a trial court has broad sentencing discretion after revoking community supervision and adjudicating guilt. *See* Tex. Code Crim. Proc. Ann. arts. 42A.110, 42A.751(d); *see also State v. Waters*, 560 S.W.3d 651, 661 (Tex. Crim. App. 2018) (recognizing nature of revocation proceedings is "highly discretionary"). The trial court's decision to revoke,

---

[5]In orally pronouncing Lyle's sentence, the trial court recognized that Lyle had a history of alcohol abuse, which the court considered "mitigating"; however, the trial court was "trouble[d]" by Lyle's "pattern of behavior [and decisions], which certainly [were] not due to alcoholism."

adjudicate, and sentence Lyle, instead of continuing his community supervision and placing him in an alcohol-treatment program, was not outside its broad sentencing discretion. *See Lake v. State*, No. 02-13-00521-CR, 2017 WL 3821902, at *4 (Tex. App.—Fort Worth Aug. 31, 2017, pet. ref'd) (mem. op., not designated for publication); *Shephard v. State*, No. 05-13-00291-CR, 2014 WL 2151975, at *4 (Tex. App.—Fort Worth May 20, 2014, pet. ref'd) (mem. op., not designated for publication). We overrule point three.

## B. ADJUDICATION JUDGMENT

In points four and five, Lyle argues that the reparations and restitution amounts in the adjudication judgment are not supported by the record.

### 1. Restitution and Fine

The State concedes that the restitution included in the adjudication judgment must be deleted because that amount was not orally pronounced by the trial court. We agree that restitution, which is similar to a fine in that it is punitive, must be orally pronounced. *See Weir v. State*, 278 S.W.3d 364, 366–67 (Tex. Crim. App. 2009); *Cantrell v. State*, No. 10-12-00269-CR, 2014 WL 2069279, at *4 (Tex. App.—Waco May 15, 2014, no pet.) (mem. op., not designated for publication). Similarly, the trial court did not orally pronounce the $980 fine that was included in the judgment adjudicating guilt.[6] Because the oral pronouncement of sentence controls, we must

---

[6]Although the fine was noted as being "Not Suspended" on the order of deferred adjudication and on the judgment adjudicating guilt, the fine must be orally

8

modify the judgment adjudicating guilt to delete the $34,297.62 ordered as restitution and the $980 fine. *Taylor v. State*, 131 S.W.3d 497, 500, 502 (Tex. Crim. App. 2004); *Mitchell v. State*, No. 02-17-00112-CR, 2017 WL 6759032, at *1 (Tex. App.—Fort Worth Dec. 28, 2017, no pet.) (mem. op., not designated for publication); *Cantrell*, 2014 WL 2069279, at *4. We sustain point five.

## 2. Reparations

The adjudication judgment included the imposition of $590 in reparations. *See* Tex. Code Crim. Proc. Ann. art. 42.03, § 2(b). Lyle argues that this amount is not supported by the record because although the balance sheet prepared by Tarrant County's Community Supervision and Corrections Department (CSCD) shows that $590 in "PROBATION FEES" were owed as reparations, the district clerk's list of fee breakdowns shows that "0.00" was owed for "Probation Fees" and for "Due to CSCD." Lyle asserts this irreconcilable conflict requires the deletion of the reparations amount.

The district clerk's certified bill of cost assessed only court costs and did not address community-supervision fees or reparations. *See* Tex. Code Crim. Proc. Ann. art. 103.001. The CSCD balance sheet shows that Lyle owed $540 in owed community-supervision fees and $50 as "DUE TO CSCD," both of which had been

pronounced at revocation and adjudication because the judgment adjudicating guilt set aside the prior order of deferred adjudication. *See Demerson v. State*, No. 02-18-00003-CR, 2018 WL 3580893, at *2 (Tex. App.—Fort Worth July 26, 2018, no pet.) (mem. op., not designated for publication).

9

categorized as reparations.  *See Ayala v. State*, No. 02-17-00385-CR, 2018 WL 2727954, at \*1 (Tex. App.—Fort Worth June 7, 2018, no pet.) (mem. op., not designated for publication) (recognizing CSCD may categorize community-supervision fees as reparations).  The district clerk's list of fee breakdowns reflected that no probation fees or other CSCD amounts remained due because they had been categorized as reparations as reflected in the CSCD balance sheet.  *See Hongpathoum v. State*, Nos. 02-18-00061-CR, 02-18-00062-CR, 02-18-00063-CR, 2019 WL 2432152, at \*3 (Tex. App.—Fort Worth June 6, 2019, no pet. h.) ("Viewing [the balance sheet and list of fee breakdowns] collectively and in the light most favorable to the reparations award, Hongpathoum's unpaid probation fees were transferred from one ledger . . . to another ledger . . ., which explains why the 'List of Fee Breakdowns' shows a zero balance."); *Ayala*, 2018 WL 2727954, at \*1 ("Because these [unpaid community-supervision] fees were characterized as reparations in CSCD's balance sheet, the clerk's fee-breakdown list correctly noted that there were no amounts due as fees."). The CSCD's balance sheet is sufficient to support $540 of the ordered reparations in the judgment adjudicating guilt.  *See Hongpathoum*, 2019 WL 2432152, at \*3.  But the $50 categorized as "DUE TO CSCD" on the balance sheet has no further identifying information allowing us to specifically trace this amount to either a statutorily authorized cost or to a community-supervision condition without impermissible speculation.  *See Demerson*, 2018 WL 3580893, at \*3.  We therefore subtract $50 from

10

the ordered $590 in reparations for a total of $540. *See id.*; *Lewis v. State*, 423 S.W.3d 451, 461 (Tex. App.—Fort Worth 2013, pet. ref'd).

Lyle additionally attacks the imposed reparations because they were not orally pronounced. These reparations, which were owed community-supervision fees, were not punitive and therefore were not required to be orally pronounced. *See Demerson*, 2018 WL 3580893, at *2. We overrule issue four.

## IV. CONCLUSION

We conclude that we have no jurisdiction to address Lyle's attacks on his original guilty plea, which do not assert that the order of deferred adjudication was void. Further, we conclude that the trial court did not abuse its discretion by revoking Lyle's community supervision, adjudicating his guilt, and imposing sentence instead of continuing his community supervision. And $540 of the ordered reparations amount, which was comprised of unpaid community-supervision fees, was supported by sufficient evidence in the record. However, because (1) the restitution and fine amounts were punitive and were not orally pronounced by the trial court at revocation and adjudication and (2) $50 of the reparations amount is characterized as "DUE TO CSCD" with no further identifying information, those amounts must be deleted from the trial court's adjudication judgment. Accordingly, we modify the judgment adjudicating guilt to delete the $980 fine, the $34,297.62 in restitution, and $50 of the ordered $590 in reparations. We additionally modify the attached order to withdraw funds to delete $1,030 from the incurred "[c]ourt costs, fees and/or fines

11

and/or restitution" for a remaining total of $854.[7]  As modified, we affirm the trial court's June 30, 2017 judgment adjudicating guilt.  *See* Tex. R. App. P. 43.2(b).

/s/ Lee Gabriel

Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  July 11, 2019

---

[7]The order to withdraw funds authorized withdrawals from Lyle's inmate trust account to satisfy $1,884 in incurred "[c]ourt costs, fees and/or fines and/or restitution."  This amount is the result of $314 in court costs, the $980 fine, and $590 in reparations.  Because $540 of the reparations amount and the court costs are collectible, the order to withdraw funds may authorize withdrawal of $854.  Although the order states that the withdrawal amount includes restitution, which must be deleted from the judgment, the $34,297.62 restitution amount was clearly not included in the order to withdraw funds.